UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| AMICA MUTUAL INSURANCE COMPANY, <br> Plaintiff, <br><br> v. <br><br> BROAN-NUTONE LLC, <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. 24-cv-229-MRD-AEM |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Before the Court is Defendant Broan-NuTone LLC's ("Broan's") Amended Motion for Summary Judgment. ECF No. 27. For the reasons explained below, Broan's Motion is DENIED.

## I.   BACKGROUND

### A.  Factual Background

The following facts are either undisputed or viewed in the light most favorable to the Plaintiff. *See Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

Paul Vargas and his wife, Anayte Vargas (collectively, the "Vargases"), purchased residential property located at 1307 Douglas Avenue, North Providence, Rhode Island, in March 2005. ECF No. 30 ¶ 1. The Vargases resided at the property continuously until February 2022, when a fire occurred. *Id.* ¶¶ 1-2. The home contained a single first-floor bathroom equipped with a ventilation fan and light combination unit, operated by separate switches. *Id.* ¶¶ 4-6. The unit was identified

as a Broan-NuTone Model 8663RP, manufactured in or around 2001 or 2002 by Broan-NuTone LLC ("the fan").  *Id.* ¶¶ 7-8.

### 1.    The Fan and the Fire

Before describing the event that led to the fire, it's important to describe a bit more about the fan.  Broan manufactured and distributed the ventilation fan, which incorporated a motor produced by A.O. Smith Corporation.  *Id.* ¶ 45.  The fan was operated by a motor-driven impeller wheel, which moved air across the motor windings to provide cooling.  *Id.* ¶¶ 47-49.  The motor contained a continuous copper winding and was equipped with a thermal cutoff ("TCO") designed to interrupt electrical current if the motor reached a specified temperature.  *Id.* ¶¶ 54-56.  In a "locked rotor" condition, such as when the motor ceases rotating due to loss of lubrication, motor temperatures can rise significantly, and the TCO is designed to deactivate the motor to prevent overheating.  *Id.* ¶¶ 61-65.  According to David Farchoine, Broan's designee, if the TCO fails to operate as designed, the motor winding may overheat and ignite.[1]  *Id.* ¶ 66.

On the date of the fire, Mr. Vargas entered the bathroom to shower and activated both the fan and the light.  *Id.* ¶ 11.  He immediately heard an abnormal sound but proceeded to the shower.  *Id.*  While showering, he heard popping and crackling sounds, prompting him to exit the shower and turn off the unit.  *Id.* ¶ 12.

---

[1] Broan-NuTone designated David Farchoine to testify at the Fed. R. Civ. P. 30(b)(6) deposition of Broan-NuTone, LLC.  ECF No. 30 ¶ 43.

He resumed showering, but the noise persisted.  *Id.* ¶¶ 12-15.  Shortly thereafter, he observed an orange glow eminating from the fan's grille and housing unit.  *Id.* ¶ 15.[2]

Before the incident, Mr. Vargas routinely cleaned the unit and, when needed, replaced its light bulb, but claims to have made no repairs or modifications to the unit.[3]  *Id.* ¶¶ 17-19.  Mr. Vargas testified that he and his family stopped using the ventilation fan after learning the cause of the fire.  *Id.* ¶ 171.

### 2.    The Investigation

An investigator from the Rhode Island State Fire Marshal's Office, Kevin Morris, conducted an origin and cause investigation under NFPA 921.[4]  *Id.* ¶¶ 27-28.  Based on his examination of burn patterns and witness interviews, Mr. Morris determined that the area of origin was the bathroom ventilation fan, where the greatest fire damage was observed.  *Id.* ¶¶ 29-33.  He considered several potential ignition sources in that area, including the ventilation fan, a battery, an exterior light fixture, and branch circuit wiring, but ruled out the battery and exterior fixture.  *Id.* ¶¶ 34-36.  He ultimately concluded that the ventilation fan was the cause of the fire.  *Id.* ¶ 37.  During the investigation, components of the ventilation fan were recovered

---

[2] Following the fire, the Vargases allegedly sustained damage to their real and personal property, loss of use of the property, and incurred additional living expenses.  ECF No. 1-1 ¶ 15.  Amica states that, under the policy, it paid more than $763,000 to satisfy those covered losses.  *Id.* ¶ 16.

[3] The product's instructions addressed only routine maintenance, including cleaning and light bulb replacement.  ECF No 30 ¶ 46.

[4] NFPA 921 is a guide for fire and explosion investigations, and here Mr. Morris specifically followed the 2021 edition.  ECF No. 30 ¶¶ 28, 69.

from the bathroom and preserved for further examination. *Id.* ¶¶ 38-41. Mr. Morris did not observe any evidence of rodent-related damage to the wiring. *Id.* ¶ 42.

The fire was also investigated by a fire investigator retained by Amica Mutual Insurance Company, Sean Reddy, who conducted an origin and cause investigation under NFPA standards.[5] *Id.* ¶¶ 68-70. Mr. Reddy concluded that the fire originated in the area of the bathroom ceiling near the ventilation fan. *Id.* ¶ 92. He ruled out alternative ignition sources, including smoking materials, wiring external to the fan, and other electrical components, and could not identify any cause of the fire other than the ventilation fan. *Id.* ¶¶ 90-91.

Amica also retained electrical expert Jan Kannally, who conducted scene inspections, laboratory examinations, and testing. *Id.* ¶¶ 94-97. Mr. Kannally likewise ruled out branch circuit wiring and other potential ignition sources, finding no evidence of abnormal electrical activity outside the ventilation fan. *Id.* ¶¶ 99-105. He identified electrical activity and internal damage within the fan, including evidence of arcing on the motor winding, and concluded that the fire originated within the unit. *Id.* ¶ 106. Based on testing and analysis, Mr. Kannally stated that the fire was caused by overheated motor winding resulting from a locked rotor condition. *Id.* ¶ 164. He added that the overheating occurred because the TCO failed to operate as intended. *Id.* In other words, the TCO failed to interrupt the circuit at elevated

---

[5] Mr. Reddy conducted his origin and cause investigation under the requirements of NFPA 1033, Standard for Professional Qualifications for Fire Investigator (2014 and 2022 editions) and NFPA 921 (2021 and 2024 editions). *Id.* ¶ 69.

temperatures.  This failure allowed the motor to continue heating up so much that internal combustible materials ignited.  *Id.*  Mr. Kannally attributed this failure to a defect with the motor and/or the TCO.  *Id.* ¶¶ 165-166.

### B.  Procedural History

Amica initially filed its complaint in the Providence County Superior Court. ECF No. 1.   The complaint asserts claims for negligence (Count I), breach of implied warranty of merchantability (Count II), and products liability (Count III).  ECF No. 1-1 at 9-14.  Broan timely removed the action to this Court based on diversity jurisdiction.  *Id.* at 1.  Following the close of discovery, Broan moved for summary judgment.  ECF No 27.  Its motion is now ripe for decision.

## II.   STANDARD OF REVIEW

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990).   Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  A dispute is genuine "if the evidence would enable a reasonable factfinder to decide the issue in favor of either party."  *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 377 (1st Cir. 2018).  A fact is "material" when it may affect the outcome of the suit.  *Id.*

The court must view the entire record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). In the first instance, the moving party "bears the burden of demonstrating the absence of a genuine issue of material fact[.]" *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000) (citations omitted). Once the moving party meets its initial burden, the burden shifts to the non-moving party to identify specific facts demonstrating the existence of a genuine issue for trial. *Id.* at 133. Claims that are factually unsupported are properly dismissed. *See Calderón-Amézquita v. Rivera-Cruz*, 158 F.4th 54, 79 (1st Cir. 2025).

## III.    DISCUSSION

### A. Products Liability Claim

Rhode Island law permits a plaintiff to pursue a strict product liability claim under three theories: failure to warn, design defect, and manufacturing defect. *See Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000) (summarizing Rhode Island's strict product liability law). "If one of these three types of defects appears in the product and that defect renders the product unreasonably dangerous in spite of all reasonable care exercised by the manufacturer, then the manufacturer is liable for that defect." *Castrignano v. E.R. Squibb & Sons, Inc.,* 546 A.2d 775, 779 (R.I. 1988) (citing *Ritter v. Narragansett Elec. Co.*, 283 A.2d 255, 262 (R.I. 1997)).

6

Broan raises several strict liability arguments, which the Court places into two primary categories and will address each in turn.[6]  First, Broan argues that the record contains insufficient evidence to show that the fan was accompanied by inadequate warnings.  ECF No. 27-1 at 7.  Second, Broan argues that Amica's manufacturing defect theory fails for three reasons: (1) Mr. Kannally's opinions, first disclosed during depositions, are untimely, speculative, and inadmissible; (2) Mr. Kannally failed to identify a specific defect in the product; and (3) there is no evidence that any defect existed when the fan left Broan's control.  *Id.* at 9.  Based on these arguments, Broan states that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law.  *Id.* at 19.

### 1.  Failure to Warn

Under Rhode Island law, a strict product liability claim based on a failure to warn theory requires a plaintiff to establish: (1) the seller failed to warn of a product danger; (2) that danger was reasonably foreseeable and knowable at the time of marketing; (3) the absence of a warning rendered the product unreasonably dangerous; and (4) the failure to warn proximately caused the plaintiff's injury. *Castrignano*, 546 A.2d at 779-82; *Austin v. Lincoln Equip. Assocs., Inc.*, 888 F.2d 934, 936 (1st Cir. 1989).  "The plaintiff has the burden of proving a defect in the product and that his or her injury was proximately caused by this defect." *Id.*

---

[6] Amica asserted a design defect theory under Counts I, II, and III in its Complaint. *See* ECF No. 1-1 at 6-11.  However, it has since opted not to pursue its claims under this theory. *See generally* ECF No. 29.

### a.  Duty to warn (foreseeability/knowledge)

Broan argues that Amica cannot establish a duty to warn because no evidence establishes that Broan knew or should have known, at the time of sale, that a TCO might fail after extended use.  ECF No. 27-1 at 8.  The Court disagrees.

Broan's own expert testified that the TCO was built into the motor specifically because a locked door rotor condition was known to occur at the end of a motor's service life.  ECF No. 30 ¶¶ 55-61.  During such a condition, the motor temperature increases, and the TCO was designed to break the circuit before the motor winding overheats.  *Id.* ¶¶ 64-65.  If the TCO does not function as intended, the motor winding may heat to a level capable of igniting combustible materials.  *Id.* ¶ 66.

This is not a case where foreseeability must be gleaned from ambiguous technical data.  Broan's expert testified to actual, specific knowledge of the precise failure sequence that caused the fire at issue.  *Id.* ¶¶ 64-66.  Under Rhode Island law, a manufacturer is held to the level of knowledge of an expert in its field and is charged with awareness of risks reasonably associated with its products.  *Castrignano*, 546 A.2d at 782-83.  Here, Broan's own expert testimony establishes the factual predicate for foreseeability and no additional expert testimony is required at the summary judgment stage to demonstrate that the hazard was reasonably knowable at the time of sale.  *Id.* at 779-782; *Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir. 1997) (plaintiffs must establish the standard of care with expert testimony).

As such, the record contains sufficient evidence from which a reasonable jury could conclude that the risk at issue was reasonably foreseeable and knowable at the time of sale.

### b.  Breach (failure to warn/standard of care)

Broan further argues that Amica has failed to establish breach because its expert failed to establish any relevant standard of care.  ECF No. 27-1 at 8.  That argument misstates Rhode Island law.  "Under strict liability, a seller need only warn of those dangers that are reasonably foreseeable.  If he does not provide such a warning, then the product is rendered defective." *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I. 1985); *see also Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.*, 772 A.2d 1056, 1064 (R.I. 2001) (affirming judgment as a matter of law on failure to warn claim and recognizing that a product is defective where the seller fails to warn of reasonably foreseeable dangers).

Amica argues that Broan provided no warning whatsoever about the fire hazard resulting from the TCO failure at the end of the product's useful life, and no estimated service life that would have allowed consumers to make informed decisions about continued use.  *See* ECF No. 1-1 ¶ 19; *see also* ECF No. 30 ¶ 170.  Although expert testimony may be necessary where a failure to warn claim turns on technical issues, *see Mills v. State Sales, Inc.*, 824 A.2d 461, 468 (R.I. 2003), Broan's own expert has acknowledged both the circumstances under which a fire-risk warning would be warranted and the absence of any such corresponding warning accompanying the product at issue here, ECF No. 30 ¶¶ 55-66, 170.  A jury may reasonably conclude

that a duty to warn was breached without the need for separate expert testimony on the standard of care.

### c. Causation

Causation presents a central issue in Amica's claim. Broan argues that Amica cannot establish proximate cause because there is no evidence that Mr. Vargas, any predecessor owner, or the fan's installer, ever read the product instructions. ECF No. 27-1 at 8. While significant, that argument also does not justify the granting of summary judgment on this record.

Rhode Island has expressly adopted the Restatement (Second) of Torts § 402A, which includes comment j's principle that where an adequate warning is given, a seller may assume it will be read and heeded. *See Swajian v. Gen. Motors Corp.*, 559 A.2d 1041, 1044 (R.I. 1989). Although no Rhode Island Supreme Court decision has expressly converted comment j into a plaintiff-side heeding presumption, Rhode Island's adoption of § 402A supports at least a permissive inference that, had an adequate warning been provided, it would have been heeded. *See Raimbeault*, 772 A.2d at 1063.

This Court need not definitively resolve that question, however, because affirmative evidence on causation exists in the record independent of any presumption. Mr. Vargas testified that he and his family stopped using ventilation fans after learning the cause of the fire. ECF No. 30 ¶ 171. A jury could reasonably infer from this evidence that an adequate warning at the time of sale would have altered the Vargases' conduct, whether by replacing the fan after a reasonable service

10

life, by scheduling inspection, or by discontinuing use in the absence of manufacturer guidance. *See Hill v. State*, 121 R.I. 353, 355, 398 A.2d 1130 (1979) (holding that "the issue of causation is almost always a question for the jury" and that "[w]hen reasonable minds could infer that causation exists, the question must be submitted to the jury"). That inference, while not compelling, is reasonable and therefore sufficient at the summary judgment stage. *O'Connor*, 994 F.2d at 907.

Broan tries to persuade the Court otherwise by citing *Santos-Rodriguez v. Seastar Solutions*, 858 F.3d 695, 697–98 (1st Cir. 2017), but this case is distinguishable. In *Seastar*, the warning at issue was contained in an owner's manual that no identified person had read, and there was no affirmative evidence bearing on what any responsible party would have done with an adequate warning. *Id.* Here, Amica argues that the product should have carried a warning or provided an estimated service life bearing on an end-of-life safety hazard. *See* ECF No. 30 ¶ 170; *see also* ECF No. 29 at 21. A warning of this nature, whether affixed to the product or included with the product manual, is the type of information a consumer performing routine maintenance would have a meaningful opportunity to encounter. The complete absence of any such communication, combined with Mr. Vargas's demonstrated attentiveness to the product (recall that he testified he cleaned the fan about three times per year throughout its service life, ECF No. 30 ¶ 18), and his post-fire behavioral response to learning of the risk is sufficient to generate a triable factual issue on causation. Broan's reliance on out-of-circuit authorities, including *Gebhardt v. Mentor Corp.*, 15 F. App'x 540 (9th Cir. 2001), and *Henry v. General*

11

*Motors Corp.*, 60 F.3d 1545 (11th Cir. 1995), do not apply Rhode Island law and do not govern this Court's analysis.  At most, these cases confirm that a plaintiff who produces no evidence bearing on causation cannot survive summary judgment.  *See Gebhardt*, 15 F. App'x at 543; *Henry*, 60 F.3d at 1548-49.  That is not the situation here.

Amica has produced sufficient evidence to create a genuine dispute of material fact as to the failure to warn claim.  The Court therefore DENIES Broan's motion for summary judgment, (ECF No. 27), as to claims based on this theory.

### 2.  Manufacturing Defect

To prevail on a strict liability claim based on a manufacturing defect theory, a plaintiff must show: (1) a defect in the manufacture of the product; (2) that rendered the product unreasonably dangerous; (3) that the defect existed when the product left the defendant's control; and (4) that the defect proximately caused the plaintiff's injury.  *See Thomas*, 488 A.2d at 722.  A defect may be shown through direct or circumstantial evidence, and circumstantial proof may suffice where a malfunction supports a reasonable inference of defect and other causes are excluded.  *See Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1045 (R.I. 1980).  In the absence of other identifiable causes, evidence of malfunction is ample evidence of a defect.  *Id.* at 1047.  That said, where the record contains plausible competing causes the plaintiff has not eliminated, a malfunction alone will not support the defect inference.  *Geremia v. Benny's Inc.*, 383 A.2d 1332, 1334-35 (R.I. 1978) (stating that the mere occurrence of a tire explosion does not establish that the tire was defective).

12

Broan argues that Amica has not identified a specific defect and has failed to eliminate three alternative ignition sources: (1) branch circuit arcing, (2) improper installation, and (3) rodent activity.[7]  ECF No. 27 at 17-18.  Amica states that there is direct evidence of an overheated motor winding shown through the series arcing on the motor winding, which contradicts the opposing arguments and creates a genuine dispute of material fact as to the defect.  ECF No. 29 at 17, 23.  Amica further states that arc mapping conducted by Mr. Reddy and Mr. Kannally eliminating electrical activity in the exterior wiring, together with Broan's own designee's testimony that a failed TCO can cause a fire, provides ample circumstantial evidence of a defect.  *Id.* at 9-12, 24.

Genuine issues of material fact preclude summary judgment on this claim.  The following facts are not genuinely disputed:  Both parties' experts placed the fire's origin at the ventilation fan (ECF No. 30 ¶¶ 91, 101), both observed series arcing on

---

[7] Broan also argues that Mr. Kannally's report fails to identify a manufacturing defect or explain the TCO failure in violation of Fed. R. Civ. P. 26, and that his deposition offers a new opinion that should be excluded under Fed. R. Civ. P. 37(c)(1).  The Court declines to preclude this testimony from the record.  Mr. Kannally's report adequately discloses his theory that the TCO failed, addressing its design, intended function, and evidence of series arcing.  ECF No. 30 ¶ 164.  He ultimately concludes the TCO failed to operate as designed.  *Id.* ¶ 167.  The deposition simply elaborates on that theory.  *Id.* ¶¶ 168-169.  Further, Mr. Kannally conducted testing and based his opinions on physical evidence.  *Id.* ¶ 164.  Any uncertainty as to the precise root cause affects the weight of his testimony, not admissibility.  *See, e.g., United States v. Ladd,* 885 F.2d 954, 956 (1st Cir. 1989).  Broan states that the Court should follow the same result in *Citation Ins. Co. v. Broan NuTone LLC,* 2025 WL 2239266 (D. Mass. Aug. 6, 2025).  There, the Court entered summary judgment for Bru-Tone on all claims, finding no admissible expert evidence of defect or causation and excluding the Plaintiff's expert opinions for failure to comply with Rule 26.  *Id.*  Although the Court recognizes the outcome of this case, it reaches a different conclusion based on the record here.

the motor winding (*id.* ¶¶ 175, 115), and arc mapping by both Mr. Reddy and Mr. Kannally revealed no electrical activity on the exterior feed wiring. *Id.* ¶¶ 79, 105. From this evidence, a reasonable jury could infer that the TCO failed to open at its rated temperature, the winding overheated, and the fire resulted.

Broan's alternative cause arguments do not foreclose that inference as a matter of law. As to branch circuit arcing, Mr. Kannally explained through arc mapping that arcing at the feed interface would have tripped the circuit breaker and terminated downstream current, which would have precluded the series arcing observed on the motor winding. *Id.* ¶¶ 117-118, 153. The presence of both arc locations in the record raises a fact of question for the jury on this competing theory. As to rodent activity, Mr. Reddy affirmatively ruled it out under NFPA 921 methodology, the State Fire Marshal observed no chewed wiring, and Mr. Kannally found no evidence of rodent activity inside the fan. *Id.* ¶¶ 90, 42, 172. Broan's observation that fire suppression activities can destroy such evidence is a fair point for cross-examination but does not negate the affirmative expert findings at this stage. Each of Broan's alternative causes is a legitimate subject for trial, but none eliminates the defect inference as a matter of law. *Scittarelli*, 415 A.2d at 1047.

Broan further argues that the twenty-year period of normal operation and the unaccounted period between installation in 2001 and 2005 preclude any finding that a defect existed at the time of sale. ECF No. 32 at 7. Amica has raised a genuine issue of material fact on this element. Amica states the TCO was incorporated into the motor at manufacture, remained present and unmodified through the date of the

14

fire, and Broan's own designee confirmed no signs of post-manufacture modification. ECF No. 30 ¶¶ 17, 55, 67. The twenty-year period of normal operation is not inconsistent with a latent defect in a safety device that activates, or fails to activate, only at the end of the motor's useful life. Broan's argument that the unaccounted installation period breaks the causal chain improperly shifts the burden of proof. It is Amica's burden to show the defect existed at sale, not Broan's burden to prove intermediate mishandling. *See Gulluscio*, 2016 WL 6459572, at *3; *see also Thomas*, 488 A.2d at 722.

For these reasons, the Court DENIES Broan's motion for summary judgment on Amica's manufacturing defect claim.

### B. Negligence Claim

Under Rhode Island law, product liability claims based on theories of strict liability and negligence are governed by substantially overlapping standards. *See DiPalma v. Westinghouse Elec. Corp.*, 938 F.2d 1463, 1466 (1st Cir. 1991) ("It is clear under Rhode Island law that the duty to warn, the violation of which is actionable by means of the so-called strict liability cause of action, is measured, in all respects material to this case, by the same standard as the duty to warn that is enforceable in a negligence cause of action."); *Raimbeault*, 772 A.2d at 1063 (noting the functional equivalence of negligence and design defect analyses). Here, because Amica's strict liability manufacturing defect and failure to warn claims survive summary judgment, as discussed above, so too does their negligence claim.

Therefore, Broan's Motion for Summary Judgment on Amica's negligence claim is DENIED.

### C. Breach of Implied Warranty of Merchantability Claim

"Rhode Island recognizes a cause of action for personal injuries based on breach of the implied warranty of merchantability." *Castrignano.*, 546 A.2d at 783 (citing *Parrillo v. Giroux Co.*, 426 A.2d 1313 (R.I. 1981)). To prevail on such a claim, a plaintiff must establish that the product was defective, that the defect existed at the time the product left the manufacturer's control, and that the defect proximately caused the alleged injury. *Williams v. Johnson & Johnson*, 581 F. Supp. 3d 363, 372 (D.R.I. 2022). Warranty liability may be premised on the failure to warn. *See Gray v. Derderian*, 365 F. Supp. 2d 218, 239-40 (D.R.I. 2005).

Here, Amica's breach of implied warranty of merchantability claim survives summary judgment because it is coextensive with Amica's strict liability claim, which remains pending. Under Rhode Island law, implied warranty claims in the products liability context are functionally equivalent to strict liability claims and require proof that the product was defective. *See Castrignano*, 546 A.2d at 783. Courts in the Circuit routinely recognize that such claims are largely duplicative and should be analyzed in tandem. *See, e.g., Commonwealth v. Johnson Insulation*, 425 Mass. 650, 682 N.E.2d 1323, 1326 (1997) ("Liability under this implied warranty is 'congruent in nearly all respects with the principles expressed in the Restatement (Second) of Torts § 402A (1965)") (quotation omitted); *see also Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1st Cir. 2001) ("Actions under Massachusetts law for breach of the implied

16

warranty of merchantability are the functional equivalent of strict liability in other jurisdictions."). Because Amica's strict liability claim remains viable, the parallel breach of implied warranty claim premised on that same defect likewise survives.

Thus, Broan is not entitled to summary judgment on Amica's claim for breach of implied warranty of merchantability, and its motion is therefore DENIED as to this count.

## IV.    CONCLUSION

For the above reasons, Broan's Amended Motion for Summary Judgment (ECF No. 27) is DENIED as to all counts of the Complaint.


IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge


May 27, 2026